WILLIAM BUTMAN v. THE VERMONT CENTRAL RAILROAD
COMPANY.

*Appraisal of land damages by railroad commissioners.   Action.*

The decision and award of commissioners, appointed to assess the damages sustained by a
land owner, from the location of a railroad, is a judicial act; and, unless appealed from,
becomes *res adjudicata*, and cannot be collaterally impeached.

After an appraisal by such commissioners, which is not appealed from, or otherwise vacated,
an action at law cannot be maintained to recover damages, which were not appraised and
awarded, in consequence of the false representations by the agents of the railroad com-
pany, in regard to the manner in which the railroad was to be constructed.

*Quære,* whether, in the absence of fraud, in the making of such representations, the land
owner could have any remedy in chancery, or by a reassessment by the commissioners.
BENNETT, J.

ACTION ON THE CASE.   The plaintiff declared that he was pos-
sessed of a certain piece of land, in Windsor, upon and across
which the defendants surveyed and located their railroad; that
commissioners were duly appointed, and met to determine the
plaintiff's damages, and when met for that purpose, the defendants,
by their agents and engineers, represented to the commissioners
and gave them to understand, that said railroad was to be con-
structed so as to cross the plaintiff's premises upon a five feet fill
or embankment, that the highway adjoining said premises was to
be filled up and raised so as to pass over and on a level with the
said railroad; that upon said representations and understanding,
and with reference to the same, and not otherwise, the said com-
missioners did determine the said damages at the sum of one hun-
dred and sixty dollars, from which determination of said com-
missioners the plaintiff did not appeal; that after the lapse of the
time allowed for the plaintiff to appeal, the defendants, not regard-
ing or fulfilling the representations or understanding so made and
given to said commissioners, did not so construct said railroad
across the plaintiff's premises; but on the contrary, instead of a
five feet fill or embankment, said railroad was constructed upon
a ten feet fill or embankment; and instead of constructing said
railroad and filling up and raising the road or highway so that
the same should pass over and on a level with said railroad, the
defendants so constructed said railroad and dug out and excavated
the said highway, that the same passes under said railroad, and

extended said excavation along in front of, and past the dwelling house and premises of the plaintiff, so as to render it exceedingly inconvenient and difficult, with carriages, teams or on foot to pass to and from the plaintiff's premises, to the highway aforesaid; that, by reason of the alteration in constructing the fill or embankment of said railroad, and in digging out and excavating the highway, as aforesaid, he had sustained much greater damage than was awarded him by said commissioners, to wit., in the sum of five hundred dollars; that, after the making of said alteration, the defendants, having neglected to cause said commissioners to examine said premises, and re-appraise the damages so caused to the plaintiff by said alteration, the plaintiff himself applied to said commissioners to assess said damages, but said commissioners declined to assess the same, and had never done it,—nor had the defendants ever paid to, or satisfied the plaintiff for the damages sustained by him, as aforesaid.

Plea, the general issue; trial by jury, December Term, 1853,— COLLAMER, J., presiding.

On the trial, the plaintiff gave evidence tending to prove the allegations in his declaration; but no evidence was given, nor was it claimed by the plaintiff, that the defendants were guilty of any fraud, or acted in bad faith. The defendants insisted, and requested the court to charge the jury, that if they found all the allegations of the declaration proved, the plaintiff could not recover. But the court refused so to charge, and instructed the jury that if they found the allegations in the plaintiff's declaration true, they should find a verdict for him for such damages as they should think he was entitled to, according to the terms of the declaration. The jury returned a verdict for the plaintiff. After verdict, the defendants filed a motion in arrest, which was overruled, to which, and to the refusal of the court to charge as requested, the defendants excepted.

*Peck & Colby* for the defendants.

*Coolidge & Safford* for the plaintiff.

The opinion of the court was delivered, at the circuit session in September, by

BENNETT, J. This is a special action on the case, to recover

damages beyond what had been awarded to the plaintiff, by the commissioners, for an injury, which, it is claimed, was done to him by reason of the construction of the defendants' railway across his premises. It is alleged that the damages were assessed by the commissioners, upon a representation, by the agents of the defendants, that the road would be constructed across the plaintiff's premises with a certain fill or embankment, and that the highway was to be so raised as to pass over the railroad on a level; and the declaration then alleges that, after the time had gone by for an appeal, the railroad was built with a certain fill or embankment greater than the one represented, and that the highway was not raised to a level with the railroad, by reason of which he sustained greater damages than what had been awarded him.

The question raised in the case is, whether the declaration discloses a legal cause of action.

The company's charter provides that, three disinterested commissioners shall be appointed, to determine the damages which land-holders, through whose lands the railroad shall pass, may have sustained, or shall be likely to sustain, by the occupation of their premises for the construction of the road. In the assessment of the damages, the commissioners act judicially, and the claim for damages becomes *res adjudicata*, and upon common principles, becomes, if not appealed from, equally conclusive upon the parties, as an adjudication by our common law courts would be, in other matters. To hold otherwise, would be to invite interminable litigation. The question as to the *quantum* of damages which the plaintiff ought to receive, was directly in issue before the commissioners, and the great question in the case is, whether, what would otherwise be the effect of their adjudication, can be avoided by the representations, which were made at the time of the assessment of the damages, in regard to the manner of constructing the railroad.

The general rule is, that a judgment cannot be attacked collaterally, or its conclusive effect avoided, by showing that it was rendered on mistaken ground; and it has even been held, that a party who has had a judgment rendered against him, by reason of the corrupt and false testimony of a witness, can have no action against such witness, because, to give him a right of action, would be, in effect, to overhaul such judgment. A party to a judgment can only

question it in due course of law by writ of error, by a petition for a new trial, or by some proceeding to set aside the judgment in a suit between the original parties, and where that is the direct object of the suit. It is doubtless sound law, that an award of arbitrators is equally conclusive upon the parties, and, while such an award is in force, no action will lie on the matter awarded upon, nor can such award be collaterally impeached by the parties to it; *Bulkley* v. *Stewart*, 1 Day, 130, and other authorities to the same effect *passim*; and not even by alleging fraud in the party obtaining the award. The same principle was applied to a decree in chancery, where it was held that no action would lie against a person procuring a decree by false and forged testimony, while such decree was in force, because this would be to impeach it collaterally. See *Peck* v. *Woodbridge*, cited in Swift's evidence, p. 10, and reported in 3 Day, p. 30. The award of the commissioners, affixing the damages, must be as conclusive as an award of arbitrators, and, I think, it should be treated, in one sense, as a judgment. The subject matter of their adjudication was the damages which the plaintiff "might have sustained, or should be likely to sustain." If the plaintiff can sustain this action to recover damages beyond what were awarded to him, upon the ground of the mistaken representations, which were made to them, it would, in its effect, be, to override the adjudication of the commissioners, and impeach it in a collateral manner. But it was said in argument, that the company act under the government, in their right of eminent domain, in taking the lands of the plaintiff, for a railroad, and that, therefore, the decision of the commissioners should not be regarded in the nature of an award, so as to compel a resort to chancery to set it aside; but it seems to us, the conclusion drawn by counsel is a *non sequitur*. Whether this adjudication could be set aside in chancery, so as to leave the question of damages an open question, it is not necessary to consider, though it is probable the plaintiff would encounter many difficulties in attempting to pursue that course. There is no pretence that there was any fraud, on the part of the railroad corporation, in procuring the appraisal, and if the railroad corporation assumed to build the railroad in a particular manner, across the plaintiff's land, in consideration of having the land damages assessed upon that basis, it would seem clear, that if the

plaintiff has any remedy, it must be upon such special undertaking. In the case of *Railroad Company* v. *Washington*, 1 Robinson, (Virginia,) p. 67, the commissioners assessed the party's land damages at a certain sum, and then added, " that the proprietor was " to receive an additional sum, in a certain contingency;"—and it was held, upon a declaration averring the happening of the contingency, that no action would lie for the additional sum; and in the *B. & S. Railroad Company* v. *Compton*, 2 Gill., 20, it was held that, an inquest for damages, for the location of the road, precluded the owner from claiming additional damages for the same original location, upon the occasion of a change in the location. If this is correct, it would seem to follow, that the commissioners, in the case before us, were correct in refusing to re-assess the damages, while the first assessment was in full force, on account of the representations made at the time of that assessment. If it was the duty of the commissioners to have re-assessed the damages, upon the application of the plaintiff, he had his remedy, upon their refusal, by *mandamus*. But it may well be questioned, whether the remedy, provided in the charter of the Vermont Central Railroad Company, for the assessment of land damages, occasioned by the construction of their road, is not exclusive, and that no remedy can be had, as at common law. Such was the decision of the supreme court of Maine, in the case of *Mason* v. *Sh. & R. Railroad Company*, under their act of incorporation, 31 Maine, 215; though in *Carr* v. *Georgia Railroad and Banking Company*, 1 Shell. 524, the remedy, under the act of incorporation, was held only cumulative. At all events, we think, that while the assessment of the damages remains in force, no action can be maintained, as at common law, to recover for an increase of damages, upon the ground that the commissioners proceeded upon a mistaken basis in making up their judgment. To allow a recovery in such a case, would be to establish a very dangerous precedent. The case of *Aldrich* v. *The Cheshire Railroad Company*, 1 Foster, 359, is strongly in point.

The result then is, the judgment of the county court is reversed, and judgment that the plaintiff's declaration is insufficient.