## GRAND RIVER DAM AUTHORITY v. SIMPSON et al.

No. 30797. April 20, 1943.

*136 P. 2d 879.*

Edward P. Marshall and Jesse L. Ballard, both of Tulsa, for plaintiff in error.

Frank Nesbitt, of Miami, and L. Keith Smith, of Jay, for defendants in error.

GIBSON, V. C. J. This is a proceeding in condemnation instituted by Grand River Dam Authority pursuant to its powers of eminent domain (art. 4, ch. 70, S. L. 1935; 82 O. S. 1941 §§ 861-881)

to acquire certain land belonging to W. A. Simpson and Josephine Simpson.

Subsequent to the award of the commissioners and the disbursement thereof as required by law, the owners demanded and were granted a jury trial over the timely objection of said Authority. The trial resulted in an award in excess of that allowed by the commissioners, and the Authority appeals.

The Authority assigns as error the action of the court in overruling its motion to dismiss the owners' demand for jury trial.

As ground for its motion to dismiss, the Authority pleaded estoppel on the part of the owners to claim compensation in excess of the purchase price as theretofore agreed upon between the parties in a written contract of sale of the premises.

Said contract provided that "the seller hereby sells and agrees to convey to the Authority and the Authority hereby purchases and agrees to pay for that certain tract of land," etc. And, after describing the tract in question, the contract continued as follows:

"2. The purchase price is One Thousand and Fifty and no/100 Dollars ($1050.00), payable in full upon execution and delivery of deed by the seller as hereinafter provided.

"3. The time limit of this contract shall be three (3) months from the date hereof.

"4. The seller shall at such time within the time limit hereof as the Authority shall request, execute and deliver to the Authority a General Warranty Deed conveying the said land above described to the Authority in fee simple, free and clear of all liens, encumbrances and defects. The seller shall be charged with and pay all liens upon the above described land on the date of the delivery of the said deed, including taxes, but the Authority may, at its election, pay such liens to the holders thereof and deduct the amount thereof from the purchase price herein specified.

"5. If the seller cannot show title satisfactory to the Authority within the

time limit hereof the Authority may cancel this contract, provided, however, that such time limit may be extended by the Authority for any reasonable time required to permit the perfecting and approval of the title."

It developed that the land was encumbered by a mortgage of approximately $300, held by a bank in Miami, and was subject to an easement for a private way theretofore reserved in the deed of a former grantor. The Simpsons tendered a warranty deed within the period specified, saying at the same time that they would obtain a release of the mortgage, and that the easement no longer subsisted by reason of their own adverse possession of all the premises for the statutory period.

But, on account of the condition of the title, the Authority refused to accept the deed, and some five months after the expiration of the period provided in the contract, commenced this proceeding in district court.

In response to the motion to dismiss their demand for a jury, the Simpsons alleged, among other things, that the Authority by commencing the condemnation proceedings had abandoned the contract and all rights thereunder, and thereby had elected to fix compensation for the land by authorized judicial process other than by agreement.

On the other hand, the Authority contends that it relied at all times on the contract, and had merely exercised its optional rights as expressed therein to extend the time allowed the Simpsons to comply therewith; that nothing was done on its part to indicate an intention to abandon the contract.

In this connection it is urged that parties to a valid contract should not be permitted to take a stand inconsistent with the terms thereof, to the prejudice of the other party, and that the Simpsons by so doing have brought themselves clearly within the rule expressed in 31 C. J. S. 232, as follows:

"In the absence of fraud, accident, or mistake, parties to a contract and their privies are estopped to deny facts agreed on or assumed in the making of the contract."

Counsel for the Authority say that the condemnation proceedings were analogous to a suit to quiet title, and accomplished the same purpose as would such an action by removing the claims of the mortgagee and the owner of the way aforesaid. This statement is apparently based upon the assumption that the contract of sale passed the equitable title in the land to the Authority, and that the Simpsons as grantors were merely made nominal parties to the proceedings, and that the Authority, though the owner of the premises, in seeking to take the easement and the mortgage lien under its power of eminent domain, was well within its rights; that is to say, the Authority's attempt to take the easement and the lien by condemnation was not inconsistent with its claim of ownership of the land.

But, subsequent to the alleged tender of the deed as above related, and until the demand for a jury, nothing occurred to indicate that the Authority still relied on the contract. These proceedings were instituted as though the contract had never existed, as is clearly shown by the allegations of the petition, as follows:

"That the plaintiff has made diligent effort in good faith to acquire by purchase, the absolute, entire and unencumbered fee-simple title to each of the above described tracts of land, but has been unable to acquire the same by purchase from the owner or owners thereof, and cannot do so now, and that the plaintiff has determined that it is necessary to acquire by condemnation said land for the construction, operation and maintenance of said project . . . ."

Nor did anything occur between the tender of the deed and the demand for a jury to indicate that the parties had rescinded the contract or had abandoned same, unless the commencement of these proceedings constituted an abandonment by the Authority.

Condemnation proceedings by the Authority are instituted and maintained in the manner provided by general law (sec. 862 (f), supra). By the general law of eminent domain organizations such as the Authority must exercise that right in the same manner and by like proceedings as provided for railroad corporations by the laws of this state (27 O. S. 1941 § 7). Under the laws pertaining to the acquisition of land by railroads, such corporations may purchase and use real property for a price to be agreed upon with the owners thereof; or the damages to be paid, when not agreed upon, shall be ascertained and determined in the manner provided in the chapter (66 O. S. 1941 §§ 52-56), which is by condemnation.

The Authority stands on the theory that as between it and the Simpsons the damages had been agreed upon in the contract, and that the condemnation proceedings were directed wholly at the easement and the mortgage, with the Simpsons joined merely as nominal parties, and that they are now estopped by the agreement.

It has been held that a landowner who agrees with the condemnor upon the price to be paid for the land and executes a deed therefor is presumed to have contemplated and arranged for all damages to which he would have been entitled in regular condemnation proceedings. Poston v. City of McAlester, 132 Okla. 4, 268 P. 1110. That action, however, was for damages to the portion of the tract not covered by the deed.

No such presumption can arise in a condemnation proceeding, for the institution of the proceeding presupposes failure of the parties to agree on damages. When damages are not agreed upon, then only may damages be ascertained by condemnation. 66 O. S. 1941 § 53.

And so it is concerning the estate or interest of the condemnee. The institution of the proceeding admits the ownership. The condemnor cannot claim the beneficial ownership of land and at the same time assert that the condemnee claims all or some part of that interest; the proceeding in condemnation cannot be employed as a means to quiet title; and the right to exercise the power of eminent domain is dependent entirely upon the ownership being in someone other than the condemnor; the power to condemn negatives ownership in the condemnor. 20 C. J. 958, 959, § 367.

The Authority could not maintain the proceedings against the Simpsons and at the same time assert the contract as a conveyance of the equitable title. Nor could it assert the contract as an agreement upon the measure of damages, for failure to so agree is a necessary element to the maintenance of the proceedings. The right to proceed necessitated an abandonment of the contract.

Whether the Authority's case would have been strengthened by an agreement with the Simpsons to proceed subject to the contract, we do not say. There was no such agreement. A limitation to that effect in the petition might have been appropriate if the facts justified, for it has been said in substance that in the absence of any limitation in the petition, the right of the respondent to full compensation for his title is conceded. Colorado M. Ry. Co. v. Croman (Colo.) 27 P. 256.

The judgment is affirmed.

CORN, C. J., and RILEY, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. OSBORN and BAYLESS, JJ., absent.